(122 So. 64)

No. 29409.

## HART v. POLIZZOTTO.

March 25, 1929. Rehearing Denied April 22, 1929.

Benton & Benton, of Baton Rouge, for plaintiff.

Albin Provosty, of New Roads, and Borron & Hebert, of Plaquemine, for defendant.

OVERTON, J. This suit was instituted in September, 1925. Its purpose is to recover of defendant certain valuable papers and documents, including $7,450 in Liberty bonds, three mortgage notes for the sum of $2,000 each, one for the sum of $1,000, dated February 27, 1922, and payable 1, 2, 3, and 4 years after date and two mortgage notes, dated April 28, 1922, for $2,000 each, payable 1 and 2 years after date, all of which are alleged by plaintiff to be his property, and to have been placed · in the possession of defendant by him as his agent. The suit also includes a demand for $1,881.71, based on a running account, rendered plaintiff by defendant.

The defense, pretermitting certain exceptions, which are not pressed on appeal, and a plea of estoppel, which possesses no real merit, is that $7,000 of the Liberty bonds were delivered by plaintiff to defendant in part payment of services rendered by the latter to the former, as his agent; that the remainder of said bonds, amounting to $450, were, long prior to the institution of this suit, sold by defendant, under the instructions of plaintiff, and the proceeds thereof accounted for to plaintiff; that the two. $2,000 mortgage notes, mentioned above, were given to defendant by plaintiff in settlement of the balance for the services rendered plaintiff, as the latter's agent; and that the four mortgage notes, three of which are for $2,000 each, and the remaining for $1,000, aggregating $7,000, were acquired by defendant from the bank at which they were pledged to secure another note, executed by plaintiff as maker and by defendant as accommodation maker.

As to the remaining papers and documents sued for by plaintiff, defendant, in his answer, virtually concedes that plaintiff is the owner of them, with the exception of a few shares of stock in an insurance company, which defendant contends he sold, at plaintiff's instance, and accounted to plaintiff for the proceeds. There is no contest in this court concerning that stock or the papers last mentioned. The contest, so far as relates to the property, alleged to be in plaintiff's possession, is confined, in this court, to the Liberty bonds and the two series of mortgage notes, mentioned above. As relates to the moneyed demand for $1,881.71, defendant denies that he is indebted to plaintiff in that sum, or in any other, and, in fact, this demand is not insisted upon in this appeal. Prior to judgment, though after all, or nearly all, of the

evidence had been introduced, plaintiff died, and Mrs. Marie Hebert Lotz, his testamentary executrix, was made party plaintiff in this suit in his place.

Plaintiff was a well driller, engaged in the business of drilling deep wells for water, under the name of the Hart Well Company. He had no partner, but usually gave the person who did the actual drilling 50 per cent. of the profits. He was engaged in that occupation for a number of years, and had a well-established business. Defendant for many years has been engaged in the mercantile business, is a member of the directorate of a bank, and has other business connections. He married, near the beginning of the present century, a young lady who he was led to believe was plaintiff's niece, but who, plaintiff testified, was not related to him or his wife, but was an orphan child reared by them. In 1902, plaintiff's first wife died. There was no issue of the marriage. About that time plaintiff began intrusting his business to defendant, and continued to do so more and more, as the years passed, until the final rupture between them, which occurred shortly prior to this suit. For years defendant managed plaintiff's business, obtained and made contracts for him, attended to the payment of bills due for the construction of wells, attended to the collection of rents for him, kept, or caused to be kept, his books, and rendered to him periodical statements.

For collecting rents, a charge was made against plaintiff of 5 per cent. on the rents collected with which to pay a boy for collecting them. No other charge was made by defendant, and, as stated, that charge did not inure to defendant, but was an expense of having the collection made.

The relations between plaintiff and defendant, until the rupture came, approached those of father and son. In April, 1916, plaintiff, in consideration of the love, friendship, and affection, which he declared he bore for defendant, donated to the latter two pieces of real estate in the town of Placquemine, upon condition that defendant should pay to him $35 a month as long as he lived. Several years later, defendant sold this property for $6,000 and paid plaintiff one-half of the purchase price. At the same time plaintiff donated to defendant another piece of real estate in the town of Placquemine, upon condition that defendant should pay him $30 a month during his life. At another time he donated to defendant's wife, whom he had reared, a piece of real estate in the town of Placquemine, and, on the same day, he donated to defendant's daughter some real property, similarly situated, attaching to each of these donations a condition that the donee should pay him $15 a month during his life. The amounts to be paid monthly, fixed in the conditions to the donations, were paid by defendant, and were equal, or a little more than equal, it is said, to the rental value of the property.

Compensation for defendant's services was spoken of in a general way at times, but nothing definite was said or done concerning it, for evidently defendant expected that some day he, his wife, or daughter would become plaintiff's heir. However, in the early part of 1921, when plaintiff was quite an old man, these hopes were dissipated. The dissipation of them was brought about by plaintiff's going to New Orleans, where he made a donation of all, or the greater part, of his property to a Mrs. Beulah Richard, in consideration of a promise of marriage. The marriage ceremony was performed, though apparently if the parties lived together it was for a very short while. Following the donation, defendant obtained from his wife a power of attorney conveying to him plenary powers

touching the property donated. When defendant learned of this donation, feeling that he had not been properly compensated for the services performed by him during the twenty years or more he attended to plaintiff's business, he approached plaintiff for a settlement. The evidence is conflicting as to what occurred, but we think that, when the record is considered in its entirety, the evidence establishes that plaintiff agreed to pay defendant $11,000, and to deliver to him, which he did, $7,000 of the Liberty bonds, involved in this suit, in part settlement of that amount, and that, in settlement of the remainder, he executed and delivered to plaintiff, at about the same time, the two $2,000 mortgage notes, in contest here. The record suggests no other reason for the execution of these mortgage notes.

▬ With reference to the remaining mortgage notes in controversy here, they being the four notes aggregating $7,000 in amount, the record discloses the following as to them: It appears that plaintiff, without the knowledge of defendant, bound himself, in solido, with others, on a continuing guaranty, for $160,000, in favor of the People's Bank, of Placquemine, which later failed. Defendant endeavored to have plaintiff relieved, as far as possible, of this contingent liability, which, to plaintiff, was a very serious one. Through his efforts and the efforts of attorneys, the matter was finally compromised so as to relieve plaintiff, on his paying approximately $7,000. Plaintiff did not have the money on hand with which to make the payment. Arrangements were made with the Iberville Bank & Trust Company to lend the money for that purpose. A note was executed in favor of the bank by plaintiff as maker, and defendant as accommodation maker, for $7,000, the two binding themselves, in solido, for the amount of the note. The four mort-

gage notes under consideration were then executed and delivered to the bank. About a month later, defendant having in the meantime sold the Liberty bonds. given him in partial payment by plaintiff, paid the note, executed in favor of the bank, upon which he was bound as accommodation maker, and the bank delivered to him the note that he paid, together with the four collateral notes. The effect of this payment, which was with defendant's own money, was to subrogate defendant to the mortgage notes given as collateral.

It is true it should be said in connection with the foregoing that plaintiff denied having executed the note in favor of the bank and having given the mortgage notes as collateral, and that he testified that defendant had enough money belonging to him on hand with which to pay the People's Bank the amount of the compromise. However, the evidence shows that plaintiff did not have the money in defendant's hands with which to make the payment, and, moreover, not only did defendant testify that plaintiff himself, signed the note in favor of the Iberville Bank & Trust Company, but the president of the bank testified that plaintiff did so in his presence. We are satisfied that defendant's account of this transaction is correct.

We may say that there was nothing inconsistent, in the transaction with defendant's obligations to plaintiff as his agent. Defendant was bound on the note with plaintiff, and on paying it he was entitled to the collateral security by subrogation.

As relates to the remaining $450 of Liberty bonds, sued for, the evidence discloses that defendant sold them under plaintiff's instructions, and accounted to him for the proceeds; and, as to the moneyed demand for $1,881.71, the record discloses that defendant is not indebted to plaintiff in any sum.

The trial court rendered judgment in favor of plaintiff, that is, his testamentary executrix, whom plaintiff made his universal legatee, for the papers and other things of value, including certain notes, sued for by plaintiff and deposited in court by defendant in response to a subpœna duces tecum, they being the documents, plaintiff's right to which defendant did not put at issue. The court in all other respects rejected plaintiff's demand, including his demand for the bonds, the two series of mortgage notes, considered above, and the demand for a moneyed judgment. In our view, the judgment of the court, so decreeing, is correct.

Defendant complains, however, of the fact that the trial court taxed him with the costs of court. The evidence is conflicting as to whether plaintiff made demand on defendant for the property involved here, prior to suit, but, be that as it may, it does not appear that defendant made a real tender to plaintiff of the documents or papers for which his testamentary executrix obtained judgment, at any time prior to judgment. The deposit of these documents in court, by defendant, in response to a subpœna duces tecum, did not constitute a real tender of them. Nor did the fact that defendant later in his answer virtually conceded that plaintiff was entitled to the papers make the deposit a real tender. To have relieved defendant of the costs, he should have made plaintiff a real tender of the documents; that is to say, a tender in the presence of two witnesses. A tender to be effective must be made to the creditor and not by deposit in open court. Briede v. Babst, 131 La. 159, 59 So. 106. Plaintiff, having been successful as to a part of his demand, is entitled to the costs of the lower court. C. P. arts. 157, 549, 551; McCarthy v. Baze, 26 La. Ann. 382. There was no error in the lower court's taxing defendant for the costs.

In this case, both plaintiff and defendant are appellants. Plaintiff's executrix has lost her appeal, and defendant has lost his appeal, which was with reference to the costs only. We shall therefore apportion the costs of appeal equitably.

For the reasons assigned, the judgment appealed from is affirmed; plaintiff to pay two-thirds of the costs of the appeal, and defendant the remaining one-third.