ODOM, J.
 

 This is a foreclosure proceeding brought by the plaintiffs against Mrs. Beulah Richards Hart, who is alleged to he an absentee, not represented in this state, for whom an attorney was appointed as provided by article 737 of the Code of Practice. Plaintiffs first sued out executory process but later converted the action into a suit via ordinaria.
 

 The plaintiff Polizzotto alleged that he was the holder and owner of two promissory notes dated February 27, 1922, one for $2,000 and the other for $1,000, both made and signed by the said Mrs. Hart, and secured by mortgage on certain described, property in the parish of Iberville. The bank alleged that it was the owner, in pledge, of one note for $2,000 of the same series and secured hy the same mortgage. They attached to their petition the notes and a copy of the mortgage relied on. The mortgage was passed before Jules A. Carville, a notary public, and two witnesses on February 27, 1922, and recites that Mrs. Beulah Richards Hart is the wife of Lewis B. Hart, and that she is “herein represented by Mr. Lewis B. Hart, by virtue of and authority of a general power of attorney attached hereto and hereof made a part.” .It recites that said Airs. Hart, by her said agent, declared that she was indebted unto Samuel Polizzotto in the sum of $7,000, represented by four notes, three for $2,000 each and one for $1,000. To secure said notes she specially mortgaged certain real estate situated in the parish of Iberville.
 

 Plaintiffs, in their converted action, pray for judgment in the amount of the notes, interest, and attorneys’ fees and that their mortgage be recognized and rendered executory against the property described and that the same be seized and sold to pay the debt, the judgment to operate in rem only.
 

 This suit was filed on Alarch 18, 1927, and on April 1st following, Airs. Hart, the defendant, applied for an injunction to restrain plaintiffs from proceeding further with their suit and from selling the property. On April 27th, Mrs. Alarie Hebert Lotz, alleging that she was then the owner of the mortgaged property, having acquired the same on August 18, 1925, intervened in the foreclosure proceeding and joined Mrs. Hart, the defendant, in her opposition to the sale and her prayer for injunction. Her grounds for the injunction are identical with those set up by Airs. Hart. No further steps were taken in these suits for more than a year for reasons which need not be stated.
 

 Mrs. Hart died on August 6, 1927, and her only child and sole heir, Mrs. Ann Richards Neely of Terrell, Tex., was by order of court substituted as party defendant in the fore
 
 *567
 
 closure suit and as plaintiff in the injunction suit brought by Mrs. Hart.
 

 The specific grounds on which Mrs. Hart and Mrs. Lotz sought the injunction, are, first, that Paul Polizzotto was not then and never had been the owner of the notes sued on by him, but that the same were the property of Lewis B. Hart, deceased. They refer to a suit brought by said Hart against Polizzotto in which the ownership of the notes was contested, which suit, it is alleged is still pending. It is well to state here that this point has passed out of the present case for the reason that the suit of Hart v. Polizzotto was finally decided by this court in favor of Polizzotto on March 25,1929. See Hart v. Polizzotto, 168 La. 356, 122 So. 64. .
 

 The other ground, and this is the principal one now stressed by Mrs. Neely and Mrs. Lotz, is, quoting from the pleadings, that:
 

 “She (Mrs. Hart, the mortgagor) never authorized the said Lewis B. Hart to execute said notes and act of mortgage, and that same are a fraud and simulation pure and simple upon your petitioner, and that said notes and mortgage were given without any consideration .whatever and without petitioner’s knowledge and consent and for the purpose of attempting to fraudulently place an incumbrance upon said real estate which belonged to petitioner and by fraudulent collusion between said Lewis B. Hart, her agent, and said Sam Polizzotto” (he being the mortgagee named in the act).
 

 It is further alleged that the order of ex-ecutory process issued without sufficient evidence in that “there is not annexed to the act of mortgage purporting to secure said notes any power of attorney or authentic act showing the authority of said Lewis B. Hart to grant and execute said notes and mortgage for and in behalf of your petitioner, Mrs. Beulah Richards Hart, and that the Cleric of this court is without legal authority-to sign and issue the order of executory process herein.”
 

 In a supplemental petition of intervention filed by Mrs. Lotz on October 3, 1929, she alleged that the power of attorney annexed to plaintiffs’ petition for executory process “is a pure simulation and was never signed or authorized by the said Mrs. Beulah Richards Hart in any manner whatever; and at the time of the alleged execution of the mortgage here relied upon, and at all times subsequent thereto, the said Lewis B. Hart was without any vestige of right, power or authority to represent the said Mrs. Beulah Richards Hart as her agent or otherwise in making or executing in her behalf any mortgage or mortgage notes whatever.”
 

 She sets out that she acquired the property on which the mortgage rests on August 18, 1925, knowing at the time that said Mrs. Hart had not authorized the execution of the notes and the mortgage; that she acquired the property under a power of attorney executed by Mrs. Hart on March-, 1922.
 

 Referring to the powfer of attorney given by Mrs. Hart to her husband Lewis B. Hart (she does not contend that there was no power of attorney), she alleges that the same was not executed by Mrs. Hart until March 27, 1922 (which was subsequent to the date of the mortgage), and that when executed, Mrs. Hart'“expressly excluded from the provisions of said power of attorney, by interlineation, any right or authority on the part
 
 *569
 
 ■of the said Lewis B. Hart to make and execute in her behalf any mortgage upon said property or to sign in her behalf any mortgage notes.”
 

 In the alternative, Mrs. Lotz alleges that, if it be true that Mrs. Hart did execute the power of attorney on February 23, 1922, instead of on March 27th, and even if Lewis B. Hart did make the mortgage as plaintiffs contend, the said Sam Polizzotto, the mortgagee, had actual knowledge “that said notes were being executed by the said Lewis B. Hart for his individual account and benefit, and not for the account and benefit of his alleged principal, the said Mrs. Beulah Richards Hart, or for any legal purpose within the scope of the alleged power of attorney herein relied upon.”
 

 In answer to these injunction suits, the plaintiffs denied that the notes and mortgage were fraudulently made by Lewis B. Hart and especially set out that he was authorized by a power of attorney dated February 23, 1922,' which was attached to the mortgage. As to Mrs. Lotz’ alternative plea, plaintiffs alleged that the notes and the mortgage were made to secure a loan made for the use, benefit, and interest of Mrs., Hart and not for the benefit of her husband.
 

 There was judgment for plaintiffs as prayed for and defendant appealed.
 

 The pleadings and annexed documents alone filed in this case fill a volume of nearly two hundred typewritten pages, to say nothing of the other two volumes filled with testimony and still other documents.
 

 We have spent much time and labor in our attempt to reach a conclusion as to what the pertinent issues involved are. There are various and sundry interventions, exceptions, pleas of estoppel, and res adjudicata, which we have not mentioned because we think it unnecessary in view of the conclusions which we have reached.
 

 In sum, the issues involved as we appreciate them are, first, whether the original debtor, Mrs. Hart, authorized her husband, Lewis B. Hart, to execute for her the notes and the mortgage relied on by plaintiffs in execution. And, second, if she did, were the proceeds of the notes used for her benefit or for the benefit of her husband?
 

 (1) The conclusion that Mrs. Hart did authorize her husband, Lewis B. Hart, to execute the notes and mortgage in controversy is inescapable. To hold otherwise would be to indict several disinterested officers and other prominent citizens for corrupt perjury.
 

 When the transactions here involved took place in 1922, Lewis B. Hart was a widower far advanced in years. Some years prior thereto he became infatuated with and later engaged to a widow in New Orleans named Beulah Richards, whom he subsequently married. On November 24, 1920 (this date is alleged to be incorrect), he executed a notarial act by which he donated to Mrs. Richards valuable real estate in the parish of Iberville, the consideration expressed in the act being “the love and affection which he has for and bears unto Mrs. Beulah Pierce, widow of William M. Richards * * * and in consideration of her marriage to him at some future date.” The property conveyed is that which is covered by the
 
 mortgage
 
 here involved. .
 

 1-Iart and Mrs. Richards were subsequently married, although it appears that they did not live together. At .the time the pre
 
 *571
 
 nuptial donation was made, Mr. Hart was involved in debt, but whether he was insolvent or not does not clearly appear. In March, 3921, the state examiner of state banks then in charge as liquidator of the defunct People’s Bank of Plaquemine, filed suit against Lewis B. Hart and six or seven others to recover judgment against them in so-lido for $160,000. There was coupled with this demand a revocatory action against Lewis B. Hart and his wife, Mrs. Beulah Richards Hart, to set aside the donation propter nuptias made by Mr. Hart to Mrs. Richards, to which we have referred, it being alleged that the donation was either a simulation and a sham made for the purpose of defeating the creditors of the said Lewis B. Hart or was made with the deliberate intent and purpose to defraud the rights of his creditors.
 

 Mr. and Mrs. Hart filed answer in which-they denied that the act of donation was a simulation or a fraud and set up that it was a bona fide donation “made in fulfillment of a long standing promise which had been made to Mrs. Hart in consideration of a contemplated marriage between them.”
 

 The suit against Lewis B. Hart et als. for a money judgment was finally compromised and judgment was rendered against them in. solido for $52,543.07. This judgment was rendered on February 27, 1922, and was paid in full immediately as shown by the receipt of the. special agent of the bank dated March 3d. The suit including the revocatory action against Mr. and Mrs. Hart was dismissed.
 

 The notes and mortgage here involved are dated February 27,'1922, the day on which the above mentioned judgment was rendered. Mr. Hart borrowed $7,000 from the Bank of Iberville and gave his note for that sum indorsed by Sam Polizzotto as an accommodation maker and pledged the notes here involved as collateral. Subsequently, Polizzotto paid the principal note and thereby became the owner of the mortgage notes by subrogation and the notes were delivered to him by the bank, and subsequently went into the hands of these plaintiffs.
 

 Mr. Hart used the $7,000 borrowed from the bank to pay his pro rata share of the judgment obtained against him and the others by the liquidator of the defunct bank. There is no question therefore that the mortgage was made to secure funds with which to pay a debt due by Mr. Hart prior to the date on which, he made the donation propter nuptias to Mrs. Richards and prior .to the marriage.
 

 Referring now to the question whether Mrs. Hart authorized her. husband to make the mortgage, we find that she did. Mr. Jules A. Carville, an attorney and notary, testified that he prepared a power of attorney to be signed by Mrs. Hart and handed it to Mr. Hart about a week prior to the date of the mortgage; that Mr. Hart immediately carried it to New Orleans, where Mrs. Hart was then residing and had it executed by her before a notary public; that he brought it back and gave it to-him, Carville; and that he then prepared the act of mortgage and the notes which were signed by Mr. Hart as agent for his wife. He testified that he attached the power of attorney to the mortgage and handed both to Mr. Grace, clerk of court, and requested that both be filed and recorded, and that he paid the fee.
 

 
 *573
 
 Mr. Grace testified that he received the act of mortgage with the power of attorney attached, from Mr. Carville, that he made a note of it in the current registry book, made a notation of the power of attorney, and handed both to his deputy, Mr. Rhoer, to be recorded. Mr. Rhoer says that when he received the mortgage from Mr. Grace, the power of attorney was attached to it and that be filed both for recordation in the mortgage records. For some reason the typist failed to record the power of attorney with the mortgage.
 

 About thirty days later, Mr. Hart called on Mr. Carville to prepare another mortgage for $4,000 under the same power of attorney. It was then discovered that it had not been recorded. Whereupon, on the suggestion of Car-ville, it was recorded in Conveyance Record Book “47,” Entry 219, on April 27th.
 

 The power of attorney as recorded is dated February 23, 1927, four days before the mortgage was made, and is signed by Mrs. Hart before Lawrence M. Janin, a notary in New Orleans (Mr. Janin was dead when the case was tried), and two witnesses. By it Mrs. Hart made her husband her agent with plenary powers to “conduct, manage and transact all and singular my affairs, business' and concern and all my property and things, personal, real and mixed of whatever nature and kind without any exceptions or reservations whatsoever; to make and endorse promissory notes for any purpose or condition that my agent shall see fit; to sell and transfer all my rights or interest that I may have in real estate or otherwise, * * * to mortgage, pledge and pawn any and all real estate or movable property situated in the Parish of Iberville, State of Louisiana; to make and give any note or notes necessary from time to time, or the renewal of the same as my agent may see fit, to borrow any money from any bank or hanks or other persons or money institutions, or notes or obligations of the said grantor, drawn by her said attorney and to secure same by mortgage or in any maimer as my agent shall see fit or to sell, transfer, convey or to mortgage and effect all or any part or parts of the real, personal or mixed estate of the said grantor * * * to lease, let or hire all or any part of the real estate belonging to said grantor and to receive and receipt for the rent thereof * * * to make, sign and execute in the name of said grantor all acts whatever of sale, mortgage, lease, release, contract, compromise, covenant, deed, agreement or otherwise that shall or may be necessary or requisite * * * with full power of substitution and revocation, hereby ratifying and confirming all that my said agent shall lawfully do or cause to be done by virtue hereof.”
 

 This is the power of attorney under which Mr. Hart acted in making the mortgage in question and which Mr. Carville, Mr. Grace, a'nd Mr. Rhoer say was attached to the mortgage and subsequently recorded. That it was recorded in the exact words and figures as originally written and as it was when signed by Mrs. Hart is proved beyond question. It must be held therefore that Mr. Hart had authority to make the notes and mortgage.
 

 Between the dates on which this power of attorney was used and recorded and that on which this suit was filed, the original of that
 
 *575
 
 document was abstracted from the recorder’s office by a party or parties unknown. In one of the many judicial proceedings connected with these transactions, it developed that Mr. Hart had sold to Mrs. Marie Hebert Lotz, the principal defendant in the present suit, all the property donated, propter nuptias, by him to Mrs. Richards and which is covered by the mortgage now in controversy, and that in making the sale he acted as agent for his wife under a power of attorney. Mrs. Lotz was ordered by the court to produce the power of attorney under which the sale was made and she did so under a subpcena duces tecum. The document which she produced was an original signed by Mrs. Hart before Lawrence M. Janin and gave to her husband, Lewis B. 1-Iart, full authority to sell all her real estate and other property. But the document produced shows on its face that it had been mutilated and changed from its original form by erasures and interlineations. The date of the document produced is March 27, 1922. The word “March” and the figures “27” are written with pen and ink, while in all other respects the document is typewritten, but a casual observation shows that in the spaces where these are written there had been erasures. There are numerous interlineations written with 'a different typewriter and with a different ribbon and several words and phrases are “exed” out. The document as mutilated gives to Mr. Hart full power and authority to do all things for Mrs. I-Iaft, except to execute notes and mortgages without her personal signature. In one place where the document recorded contains the words “make and to sign” notes, etc., the words “and to.sign” are erased and the words “I to sign” are written in. The interlineations provide that notes are to be “signed Mrs. Beulah Richards Hart — True Signature,” etc. At the bottom of the instrument there is written with a different typewriter the following sentence above the signature of Mrs. 1-Iart:
 

 “Through the advice of my attorney, I'personally made all changes in this power of attorney, before signing it before a notary— this being the only one I
 
 sign
 
 since our marriage.” (Italics ours.)
 

 Except as to the interlineations and changes noted, the document produced is precisely the same as the one recorded and our conclusion is that the original document was mutilated after it was abstracted from the recorder's office.
 

 (2) As to the second defense urged by Mrs. Lotz and Mrs. Neely, sole heir of Mrs. Hart, it conclusively appears, as we have said, that the notes and mortgage were made for the purpose of enabling Mr. Hart to pay a debt which he owed prior to and at the time he made the prenuptial donation to Mrs. Richards at the time they were married. Because this is true, it is argued that Mrs. 1-Iart mortgaged her property to pay her husband’s debts, which is prohibited by article 2398 of the Civil Code. This restriction upon the power and authority of married women was abrogated by Act No. 283 of 1928, page 548, which act specifically confers upon them capacity to bind themselves personally and to hypothecate their property, “by way of security or otherwise, for the benefit of their husbands or of the community between them and their husbands.” But as the act was not adopted until after this mortgage was made, the old law controls.
 

 
 *577
 
 The .article of the Code above cited provides that the wife “can not bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage.”
 

 This is the article relied on by defendants but under the circumstances here shown, the article does not apply.
 

 Article 1552 of the Civil Code, which is found under the general heading “Of Donations Inter Vivos,” reads:
 

 “The universal donee is bound to pay the debts of the donor, which existed at the time of the donation, but he can discharge himself therefrom by abandoning the property given.”
 

 So far as the record discloses, the donation which Mr. 1-Iart made to Mrs. Richards divested him of all his property. She accepted the donation and thereby became responsible for the debts due by the donor. She could have discharged herself from those debts by abandoning the property given. She did not abandon the property but persistently held it.
 

 It is perfectly apparent that Mrs. Hart realized that the judgment against her husband must either be paid or she would lose the property donated, and further apparent that her prime purpose in mortgaging the property was to save it for herself. When she chose to hold the property instead of abandoning it, knowing that this debt of $7,000 had to be paid or she would lose it, she accepted the debt as hers — she assumed it and it became her debt and not that of her husband.
 

 The property of a debtor is the common pledge of his creditors and under the express provisions of our Code, the universal donee is bound to pay the debts of the donor. Mrs. Richards accepted the property subject to the debts of the donor. When she elected to keep it, she became bound for the debts of the donor, and now that she has married the donor, she cannot escape the payment of this debt under the pretext and cloak that as a married woman she cannot bind herself or hypothecate her property for the debts of her husband. She was bound for the debt when she married and her subsequent marriage to the donor did not relieve her of the debt. To sanction her defense on this ground would be contrary to the long settled jurisprudence of this state and contrary to and violative of every rule of justice and equity.
 

 Over a hundred years ago our predecessors held that a donation propter nuptias cannot be made to the prejudice of creditors. Mercer v. Andrews, 2 La.. 538. To the same effect are the cases of Cable v. Coe et al., 4 La. 554 (see same case on rehearing, 4 La. 556), Porche v. Moore, 14 La. Ann. 241, and Chase v. McCay et al., 21 La. Ann. 195. See, also, Jones v. Morgan’s Widow & Heirs, 6 La. Ann. 630.
 

 For the reasons assigned the judgment appealed from is affirmed with all costs.